IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CIVIL NO.: 26-CV-1598

LUIS ANGEL OTERO REYES AND NORMA RODRIGUEZ BY THEMSELVES AND ON BEHALF OF THEIR DECEASED SON, JUAN ANTONIO OTERO RODRIGUEZ AND HIS SIBLINGS, YARIXA OTERO, ANGEL OTERO, GAJAIRA OTERO, EMANUEL OTERO and NATACHA OTERO,

PLAINTIFFS

Vs.

OMAR I. MAYSONET ROMAN, ARIEL MAYSONET MORALES, MRD TRANSPORTS, LLC, AND INSURANCE COMPANY "A" and "B",

DEFENDANTS

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**TO THE HONORABLE COURT**:

COMES NOW, the plaintiffs, through the undersigned attorney, and very respectfully allege, state and request**:**

## I. NATURE OF THE CASE

1. This is an action in tort for damages under Puerto Rico Civil Code, Article 1802, 31 L.P.R.A. Sec. 5141, et. seq

## II. JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction over the parties and the subject matter of this litigation pursuant to 28 U.S.C. Sec. 1332, inasmuch as there is complete diversity of

citizenship between the plaintiffs and the defendants and the amount in controversy, exclusive of costs and interests, exceeds seventy-five thousand dollars ($75,000.00).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391(a) since the claims alleged arose in this judicial district.

**III. JURY TRIAL DEMAND**

4. The plaintiffs request a jury trial for all triable issues.

**IV. THE PARTIES**

**Plaintiffs**

5. The plaintiffs are Luis Angel Otero and Norma Rodriguez, who are the parents of the Plaintiff-decedent, Juan Antonio Otero Rodriguez, citizens of the United States of America and residents of and with domicile in Leominster, Worcester County, Massachusetts.

6. The other plaintiffs are: Yarixa Otero, sister of the plaintiff decedent, who resides in Leominster, Worcester County, Massachusetts; Gajaira Otero, sister of the plaintiff decedent who resides in North Andover, Essex County, Massachusetts, Angel Otero, decedent's brother, who resides in Worcester County, Massachusetts, Emanuel Otero, of Worcester, Worcester County, Massachusetts and Natacha Otero, of Leominster, Worcester County, Massachusetts.

D**efendants**

7. The Defendants are Omar I. Maysonet Roman, is a resident of Calle E-59 Praderas de Ceiba Norte 2, Juncos, Puerto Rico, 00777.

8. Defendant Ariel Maysonet Morales is a resident of Urb Sabanera del Rio, Calle Camino de las Miramelindas, # 330 Gurabo, Puerto Rico, and is the father of Defendant Omar I. Maysonet Morales.

9. Defendant MRD Transports, LLC is a Puerto Rican Company organized in the Commonwealth of Puerto Rico since 2013. Its business address is Suite 326 Senorial Station, San Juan, Puerto Rico. Ariel Maysonet Morales is the President and Agent of

MRD Transports. MRD Transports conducted, either by itself, or through its agents, business transactions within Puerto Rico, and it also participated, either by itself or through its agents, within Puerto Rico in the commission of the tort object of this complaint.

10. Defendant Insurance Company "A" and "B" are corporations organized, and which have their principal place of business in a State other than the Commonwealth of Puerto Rico, and which had issued an insurance policy on behalf of MRD Transports which policy covers for its liability under a factual situation such as the one alleged in this complaint.

11. Defendant Insurance Companies "A" and "B" are designated with a fictitious name because their true name is not known at this time.

**V. GENERAL ALLEGATIONS**

12. On September 14, 2025 at approximately 0751 hours, Juan Otero Rodriguez, ("Otero Rodriguez") of 40 years of age, was employed by Save Green Corporation ("Save Green") a Puerto Rican company that contracted and provided highway cleaning, sweeping and mowing services to the Puerto Rican Autoridad de Carreteras (Highway Authority).

13. Otero Rodriguez was working with a crew of workers employed by Save Green Corp. Save Green utilized manpower and heavy road equipment to fulfill its contractual obligations. Some of the heavy equipment that they utilized included a large and heavy security truck with a large illuminated directional signal for road traffic to be warned of road crew and equipment ahead and to move to the next lane. Other heavy equipment included a dump truck for Save Green employees to pick up debris

on and from the side of the highway. In addition, their employees were operating a large truck mounted with a mechanical broom sweeper.[1]

14. Otero Rodriguez and four other co-workers were assigned that day to work on the side of the Autoridad de Carreteras/Route 30 west bound, at Kilometer 10.9 between the municipalities of Juncos and Humacao, Puerto Rico.

15. The first truck in line was a large dump truck operated by Alfredo de Leon Caballero. The second truck was the mechanical broom sweeper operated by Onix Marrero Campos, and the third or last truck was an International flatbed truck towing a heavy duty industrial fabricated steel frame and operated by Justo Rene Aviles Torres; this truck had a large illuminated warning signal for drivers to stay clear of the road crew as well as industrial shock absorbers to protect the operator from rear collisions.

16. Otero Rodriguez and other co-workers, including Christian Nieves Soto and Lucas Agosto, were on foot working inside of the breakdown lane of Route 30 picking up trash and road debris and shoveling it into the back of a dump truck owned by Save Energy. Christian Nieves was first in line, Lucas Agosto was second in line and Otero Rodriguez worked last in line.

17. The Route 30 expressway possessed a shoulder "rumble strips"[2] on both sides of the expressway. Shoulder rumble strips were specifically milled into the pavement on the highway as a safety alert causing noise and vibration when a car or truck's tires drive over the grooves to wake up and/or refocus drowsy or distracted drivers before a crash.

18. Immediately before the crash Save Green driver Justo Rene Aviles Torres who was operating the security truck with the directional lights looked in his rear-view mirror and observed a large box truck traveling at a high rate of speed. Suddenly and without warning the box truck (according to Aviles Torres' sworn statement) crashed onto the

[1] The broom sweeper was manufactured by Elgin and the model was the Crosswind. Upon information and belief the Gross Weight Rating (GVWR) for a standard truck-mounted Elgin Crosswind regenerative air sweeper typically ranges between 32,900 to 33,000 Lbs.

[2] They are typically referred to in Spanish as "Franjas vibratorias" or "Bandas rugosas."

left side of his truck causing heavy damage to it and to the equipment he towed. (See insert of photographs from accident scene taken by Puerto Rican Dept. of Public Safety -Highway Patrol & Caguas expressway -Division Serious/fatal accidents)









19. Upon impact Aviles Torres was propelled to the right seat of his truck and he next saw the box truck driven by Maysonet Rodriguez next crash against the large industrial sweeper lifting it up from the ground and propelling it forward. See inserted diagram of the accident prepared by the PR Dept. of Public Safety-Highway Patrol & Caguas expressway -Division Serious/fatal accidents.






20. Aviles Torres told law enforcement investigators he did not hear any warnings or other sounds from the high-speed traveling box truck, no screeching tires or blast of its air horn.

21. Seconds before the crash Save Green worker Alfredo De Leon Caballero, who was slowly driving the dump truck, told law enforcement investigators in a sworn statement that he had looked into his rear-view mirror and noticed a large box truck driving very fast and "zigzagging" on the road, then crash first into the signal/security truck and then the sweeper at a high rate of speed. De Leon Caballero also did not hear any horn warnings or screeching tires from the box truck.

22.Maysonet Rodriguez crashed his box truck against the Elgin industrial sweeper which propelled it forward causing the sweeper to strike and injure both Otero Rodriguez and Christian Nieves Soto.

23.The impact from the sweeper caused Otero Rodriguez to be pinned by the large commercial left tire of the sweeper.

24. Save Green coworkers frantically removed Otero Rodriguez from underneath the front tire of the sweeper and noticed he was bleeding. Otero Rodriguez sustained a head injury. Co-workers heard Otero Rodriguez moaning and attempted to get up from the ground. Otero Rodriguez was experiencing severe pain and went in and out of consciousness. He suffered catastrophic injuries.

**<u>The actions of the defendants' were the proximate cause of Otero Rodriguez' injuries and death.</u>**

25.At all times material to this complaint Maysonet Rodriguez operated a Medium duty M2 106 2012 Freightliner box truck VIN# 1FVACXDTXCHBS4380 in the course of his employment that per the manufacturer's specifications had a 26,000 lb. gross vehicle weight rating (GVWR) and up to 66,000 lbs.[3]

26. The Freightliner truck operated by Defendant Maysonet Roman was owned and registered to his father, co-defendant Ariel I. Maysonet Morales.

27. Although the Freightliner truck operated by Maysonet Roman was owned by his father, Maysonet Morales, this vehicle had signage affixed to the exterior advertising the following: "MRD Transport 787 914-2218."[4] Below that sign there was another sign that read "SE HACEN MUDANZAS 787 379-8345." [5]

[3] The truck registration provided a GVWR o 55,110 lbs.
[4] Phone records demonstrate (787) 914-2218 is a phone registered to defendant, Ariel Morales Maisonet.
[5] Phone records demonstrate (787) 379-8345 is a phone registered to defendant Omar I. Maysonet Roman.

28. The Freightliner truck driven by Maysonet Roman involved in the accident was bring used to further the business of MRD Transports LLC, of Maysonet Roman and the interest of Maysonet Morales. [6]

29. Maysonet Roman operated the Freightliner truck with the express knowledge and permission of its registered owner, Maysonet Morales and/or with the consent of MRD Transports, LLC, its agents, servants or employees.

30. In the alternative and regardless of the actual registration ownership of the Freightliner truck, Maysonet Roman and Maysonet Morales operated a de facto trucking transportation partnership at all times material to this complaint.

**The accident scene and the events leading to the accident**

31. Upon information and belief, at all times material to this complaint the Freightliner truck driven by Maysonet Roman did not have any mechanical defects that would explain, account for, or that contributed to causation of the accident.

32. Route 30 at the site of the accident was a relatively flat stretch of highway.

33. A typical "driver's eye height" or driver's eye line sits approximately 7'-8' above the pavement inside an M2 cab Freightliner truck similar to the one driven by Maysonet Roman making the road visibility excellent and allowing the driver to see and react to any traffic conditions or road emergencies.

34. Upon information and belief, Maysonet Roman either became drowsy or briefly fell asleep while operating the truck, and was not operating the vehicle safely by keeping a sharp lookout for obstructions, people, or other hazards in its path, and remaining vigilant and ready to react quickly to prevent foreseeable harm to persons or property.

35. As a direct and proximate result of Maysonet Roman's negligence, gross negligence, and/or recklessness, including but not limited to his excessive speed, inattention, neglect, distraction and/or driving a heavy vehicle while drowsy or sleep deprived, or

[6] Pictures obtained by law enforcement officers from the Puerto Rican highway patrol demonstrate that the MRD truck was carrying cargo of undetermined weight.

as a direct and proximate result of other human factors, Maysonet Roman's truck began to zigzag in the right lane of travel on Route/Carretera 30, crossed over the rumble strips and crashed against the left corner of the security/signal truck as previously alleged in this complaint, the his vehicle crashed into the security truck and the Elwing sweeper while they were located within the break-down lane.

36. All vehicles impacted by Maysonet Roman's truck, including his truck suffered extensive structural and property damage. According to the diagram prepared by Puerto Rico Police Officer José Alicea, Badge No. 18851, Maysonet Román, while operating his Freightliner truck, struck the rear of the security truck. Despite the impact and the forward momentum imparted to the security truck, the Freightliner continued traveling for a distance of no less than 100'feet and subsequently struck the second truck (street sweeper), lifting it into the air and propelling it forward. This suggest that Maysonet Román was operating the Freightliner at speed higher than a reasonable safe speed considering the works been done and the conditions in this section of the PR-30. See inserted diagram of the accident prepared by the PR Dept. of Public Safety-Highway Patrol & Caguas expressway -Division Serious/fatal accidents.




ELGIN
ELGIN
Crosswind


MRD Transport
787-914-2218




37. Maysonet Roman was grossly negligent; he did not honk his air-horn to warn anyone, did not apply his truck's brake, or take any evasive action to avoid or reduce the force of impact. Upon information and belief, at the accident scene highways patrol officers did not find any brake or skid-marks on the road from the Freightliner truck driven by Maysonet Roman.

38. After crashing against two of Save Green's trucks, the security/signal truck, and the Elgin Crosswind Sweeper Maysonet Roman spoke with investigative officers from employed by the highway patrol department of the Puerto Rico police department.

39.Maysonet Roman told them, he fell asleep or become drowsy immediately before the crash.

40. Defendant MRD, LLC's negligence and fault was the adequate/direct and/or proximate cause of the aforementioned accident due to: A: Its authorized person driving a company vehicle at a dangerous speed; B: Its authorized person's careless and

reckless driving; C: Its authorized person's lack of precaution and failure to take preventive measures to avoid the accident.

41. Defendants Insurance Companies "A" and "B" are directly jointly and severally liable to the Plaintiffs for all the damages caused to them as a result of the above.

**CAUSES OF ACTION**

**1. First Cause of Action Damages under 31 LPRA §§ 1540,[7] 5141, & 1542**

42.All the paragraphs stated herein above are literally incorporated herein and are made part of this paragraph.

43. Right after the accident, plaintiff Otero Rodriguez's medical condition rapidly decompensated and had to be air-lifted in a helicopter ambulance to Centro Medico in Rio Piedras, Puerto Rico. He arrived with a diagnosis of massive brain trauma, gross deformity of the parieto-occipital area of the right head. He also had a collapse of his right lung, and acute respiratory failure. He had to be intubated.

44.Otero Rodriguez suffered a catastrophic head injury. Centro Medico medical records show he had loss of brainstem reflexes, absent pupillary or corneal reflexes or gag reflex. Brain death was documented on September 18, 2025 at 18:12 hours.

45. As a direct consequence of the facts and gross negligence described above, the plaintiff Otero Rodriguez died.

46. An autopsy performed by Forensic Pathologist Rosa M. Rodriguez at Instituto de Ciencias Forenses determined his manner of death was accidental and his cause of death occurred from complications from severe cranial/cerebral trauma.

---

[77] Under § 1540, an employer is liable for injuries caused by employees in the course of their employment.

47. Dr. Rodriguez found, diffused cerebral edema, diffuse pronounced subarachnoid hemorrhage, bilateral subdural hematoma, hemorrhagic cerebral contusions, intraventricular hemorrhage, a hemorrhagic lesion to the Pons, a subgaleal hemorrhage, a hemorrhage in the brain white matter, a fracture of the cranial vault and base of the cranium, advanced respiratory distress syndrome and severe complications from cerebro-cranial trauma.

48. The estate of Otero Rodriguez which is formed by plaintiffs in this case have instituted this cause of action which belonged to Mr. Otero Rodriguez, immediately prior to his death. All of the plaintiffs' injuries occurred as the direct and proximate results of the defendants' gross negligence.

49. Otero Rodriguez experienced conscious pain and suffering prior to his death.

50. Otero Rodriguez' parents and siblings also instituted this claim due to their own personal suffering, loss of society and consortium. Their personal suffering was the direct and proximate result of the injuries and death of Mr. Otero Rodriguez which was directly caused by the gross negligence of the defendants.

51. Upon information and belief, due to the accident, Otero Rodriguez received medical treatment and care and incurred medical expenses for that care, including being airlifted by AeroMed and Centro Medico in Rio Piedras.

52. Upon information and belief, Otero Rodriguez's parents and family members also incurred funeral expenses, transportation and burial expenses in excess of $20,000.00

**2. Second Cause of Action Insurance Company "A" and "B" 26 LPRA §§ 2001 and 2003.**

53. All the paragraphs stated herein above are literally incorporated herein and are made part of this paragraph.

54. Article 20.010 of the Puerto Rico Insurance Code states that an insurer who issues a policy insuring a person against damages due to legal liability for bodily injury, death,

or property damage to a third person shall be liable where a covered loss occurs P.R. Laws Ann. tit. 26, § 2001.

55. Article 20.030 provides the injured person with a direct cause of action against the insurer, without prejudice to any action the injured person may file against the insured P.R. Law s. Ann. tit. 26, § 2003.

56. Defendants A & or B Insurance Company and Insurance Companies ¶ 10-11 have issued insurance policies in favor of the other Defendants, which policies cover the claims at bar. Consequently, Defendants A & B Insurance Company and Insurance Companies 1-1 are liable for Plaintiffs' injuries in accordance with the terms of their insurance policies. Defendants are jointly and severally liable.

**Third Cause of Action: PUNITIVE DAMAGES (Directed at All Defendants)**

57. Plaintiffs restate herein and incorporate by reference the preceding allegations.

58. Article 1538 of the Puerto Rico Civil Code provides for double punitive damages, if the tortious act or omission is a crime, is made with dolus or with reckless disregard to life, safety, and private property. P.R Laws Ann tit. 31§ 10803.

59. Defendants' actions were made with reckless disregard to the safety of Otero Rodriguez.

60. Defendant Maysonet Roman will be arraigned and charged for the negligent homicide of Otero Rodriguez in violation of Article 5.07 of the Puerto Rico vehicle traffic Law (Ley 22-2000). The formal arraignment is scheduled to take place on September 23, 2026 in the Centro Judicial, Caguas, PR. Consequently, the court should award double damages for the injuries suffered by Otero Rodriguez..

**Fourth Cause of action: Damages for Family Members (Directed at all Defendants)**

61. Plaintiffs restate herein and incorporate by reference the preceding allegations.

62. The Puerto Rico General Tort Statute confers the relatives or loved ones of a tortiously injured individual with a cause of action against the alleged tortfeasor for emotional damages suffered by the relatives or loved ones. See Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 24 (1st Cir. 2009) (quoting Méndez-Matos v. Municipality of Guaynabo, 557 F. 3d 36, 37 (1st Cir. 2009)).

63. The tortious conduct described above has caused Otero Rodriguez's parents and siblings emotional harm. In accordance with the Puerto Rico General Tort Statute, they are entitled to an award of damages corresponding to and in redress for this emotional harm.

64. Further, and because the tortious conduct described above was made with reckless disregard to Otero Rodriguez' life, his parents are also entitled to punitive, double damages. See: P.R. Laws Ann. tit. 31, § 10803.

65. Plaintiffs reserve the right to amend or supplement the allegations in this complaint.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs hereby demand that all issues raised in this Complaint be tried by a jury.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs respectfully ask the Court to enter judgment against Defendants, providing the following relief:

- An award of compensatory damages, including medical bills, funeral costs, conscious pain and suffering;
- Declaring defendants to be in violation of 31 LPRA § 5141, 5142 and in violation of 26 LPRA, § 2003 as alleged in the complaint;

- An additional award of punitive damages;
- Finding all defendants jointly and severally liable to the plaintiffs in this action, for all economic, noneconomic damages sustained;
- All other relief which the Court considers proper under law or in equity.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico this 15th day of September, 2026.

Respectfully submitted,
Plaintiffs by their attorneys

*/s/ Hector E. Pineiro-Rosado*

Hector E. Pineiro Rosado,
Esquire
USDC- PR No. 221909
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
Fax (508) 770-1300
hector@pineirolegal.com

Date: September 15, 2026